**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION**

Civil Case No.:

| | |
|---|---|
| NICK ROGERS, as an individual and on behalf of all others similarly situated, | : : : |
| *Plaintiff,* | : : |
| *vs.* | : : : |
| NOW HOME BUYERS LLC dba WHOLESALE FLORIDA HOMES, INC., a Florida Corporation, | : : : : |
| *Defendant.* | : |

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES
AND INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*,
THE TELEPHONE CONSUMER PROTECTION ACT**

Plaintiff, NICK ROGERS, ("Plaintiff") individually, and on behalf of all others similarly situated, by and through his undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby files this Class Action Complaint, and alleges against Defendant, NOW HOME BUYERS LLC dba WHOLESALE FLORIDA HOMES, INC., ("Defendant"), as follows:

**I. INTRODUCTION**

1. Plaintiff brings this action against Defendant for damages, injunctive relief, and any other available legal or equitable remedies to secure redress from the illegal actions of the Defendant in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone multiple times, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, thereby invading Plaintiff's privacy.

2. Plaintiff brings this claim pursuant to 47 U.S.C. §§ 227(b) and the associated Federal Communications Commission ("FCC") Regulations, for unlawful, unsolicited calls and

text messages made to the cellular telephones of Plaintiff and others using an automatic telephone dialing system and an artificial or prerecorded voice.

3. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

4. Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

5. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

## JURISDICTION AND VENUE

6. The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747 (2012). The Court further has subject matter jurisdiction over this action pursuant to the Class action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because, based upon information and belief,(i) at least one member of the putative class is a citizen of a state different from one of the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that section apply to this action. Plaintiff is a citizen of Florida and at least one member of the class can be considered a citizen of a different state of Florida. Defendant is a citizen of the state of Florida.

7. Plaintiff alleges that based on the anticipated number of unlawful and unwanted calls and texts made by Defendant, the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below.

8. This Court has personal jurisdiction over Defendant because it conducts significant amount of business in this District and the unlawful conduct alleged herein occurred in, was directed to, and/or emanated from this District.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant conduct business in this District, the improper conduct alleged in this Complaint occurred in this District, and the injury arose in this District, including the transmission of the subject unauthorized text advertisements. Venue is additionally proper because Plaintiff resides in this district.

### III. PARTIES

10. Plaintiff, NICK ROGERS, is a natural person and a resident of Palm Beach

County, Florida. At all relevant times Plaintiff was the sole user, subscriber, owner, and possessor of the cellular telephone at issue.

11. Defendant, NOW HOME BUYERS LLC dba WHOLESALE FLORIDA HOMES, INC is a Florida corporation, with its principle address located at 703 Shotgun Road, Sunrise, FL 33326. Defendant's Title Manager is Craig L. Martinez located at 3111 NW 125th Ave, Sunrise, FL 33323 and Defendant's registered agent is Zubero Syed & Manrara, LLC located at 8461 Lake Worth Road, Suite 110, West Palm Beach, FL 33467.

12. Defendant is a real estate broker in the business of selling real estate, including the solicitation of potential investors for Defendant's business.

13. Defendant uses a business model whereby it promotes its business, in part, by sending unsolicited robo-text messages and pre-record phone calls to wireless phone users.

14. Defendant, directly or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages and phone calls that are the subject matter of this Complaint.

### IV. **FACTUAL ALLEGATIONS**

15. At all times relevant, Plaintiff was a citizen of the State of Florida. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

16. Defendant is, and at all times mentioned herein was, a corporation and "persons," as defined by 47 U.S.C. § 153 (39).

17. At all times relevant Defendant conducted business in the State of Florida and in Palm Beach County, within this judicial district.

18. Defendant, directly and/or through the use of contracted for agents or vendors,

solicits consumers as prospective customers or investors by engaging in the systematic business practice of placing uninvited telemarketing calls and text messages to potential customers or investors, and then attempting to sell them real estate or otherwise conduct business with Defendant.

19. In order to obtain more customers and investors, Defendant uses the invasive and illegal method of telemarketing solicitation known as "robo-calling" and "robo SPAM text messaging."

20. Defendant uses "robo-calling" and "robo-texting" in order to gain an unfair competitive advantage in the competitive world of lead generation.

21. Every "robo-call" and "robo-text" sent to one of Defendant' prospective customers or investors was done by, at the direction of, and/or for the benefit of, Defendant.

22. Defendant knew and/or should have known that it was using "robo-calling" and "robo-texting" to generate leads. Additionally, Defendant failed to have adequate and proper policies and procedures in place to ensure that its agents and/or vendors were not using the illegal telephone solicitation method of "robo-calling" and "robo-texting." Therefore, Defendant is directly liable for the "robo-calls" and "robo-texts" made to Defendant' prospective customers.

23. Because Defendant makes unsolicited robocalls and robo spam texts to potential customers and investors without prior consent, it has, and continues to violate the TCPA.

24. Upon information and belief, Defendant uses equipment that constitutes an automatic telephone dialing system under 47 U.S.C. § 227(a) to place calls and texts to consumers' cellular telephones.

25. Further, Defendant delivers pre-recorded messages in the telemarketing calls to consumers.

26. For example, Defendant places pre-recorded calls to consumers, including Plaintiff, notifying them that it is selling properties, including a "7 unit off market multi-unit income producing property…" A pre-recorded message using an automatic dialing system is utilized by Defendant to solicit customers.

27. Defendant also sent unsolicited robo spam text messages through the use of an automatic telephone dialing machine to Plaintiff without Plaintiff's consent, advertising a similar "7 unit multifamily [dwelling in] Hollywood, Florida."

28. Defendant made, and continues to make, these telemarketing calls and spam texts to consumers nationwide through the use of an ATDS without their prior written consent to do so.

29. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

30. Upon information and belief, this ATDS has the capacity to store numbers on a list and to dial numbers from a list without human intervention.

31. The impersonal and generic nature of the messages that Defendant sent to Plaintiff demonstrate that Defendant used an ATDS to send the subject messages.

32. Defendant used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

33. Upon information and belief, Defendant used a device to send the subject messages to Plaintiff and Class Members that stores numbers and dials them automatically from a stored list of phone numbers as part of scheduled campaigns.

34. The telephone number the Defendant called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

35. The messages sent to Plaintiff constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

36. The TCPA was enacted to protect consumers from unsolicited telephone calls and texts, like those at issue here. Defendant made these calls despite the fact that neither Plaintiff, nor the other members of the putative Class, ever provided Defendant with their prior express consent to be called.

### V. FACTS RELATING TO PLAINTIFF

37. On or around December 18, 2019, Plaintiff received a telephone call on his personal cellular telephone from the number 954-361-4669. Because the caller was not one of Plaintiff's contacts and Plaintiff did not otherwise know who was calling, he did not answer the call. Plaintiff nonetheless listened to the voicemail left on Plaintiff's cell phone by the unidentified caller. The voicemail contained a pre-recorded message notifying Plaintiff of a "7 unit off market multi-unit income producing property here in Hollywood, Florida…" that was available for sale. Plaintiff uses his personal cellular telephone as his residential line.

38. When Plaintiff listened to the voicemail, there was a delay before the message started playing. Additionally, the generic nature (the message doesn't mention Plaintiff's name or any specific identifiable information of Plaintiff in the voicemail) of the voicemail, and overall sound of the voicemail made it apparent that it was clearly a pre-recorded message.

39. Further this message did not provide Plaintiff with an option to be placed on Defendant's "Do Not Call List."

40. A screen shot of the voicemail received on December 18, 2019 is shown below for demonstrative purposes:



41.     In addition to the above mentioned robo-call, Plaintiff received the following unsolicited robo-texts from short code "484-848" on his cellular phone from the Defendant on December 18, 2019, at approximately 11:11 a.m. and 12:11 p.m., and on January 7, 2020 at approximately 1:29 PM:





42.     Additionally, on January 8, 2020, Plaintiff received yet another robo-call from Defendant at approximately 4:52 p.m. A screen shot of the voicemail received on January 8, 2020 2019 is shown below for demonstrative purposes:



43.     Plaintiff did not provide his prior express written to be called or texted by Defendant and did not interact with Defendant in any way prior to receiving a call or text from them.

44.     Defendant is and was aware that they were placing unsolicited robo-calls and robo-texts to Plaintiff and other consumers without their prior written express consent.

45.     Plaintiff was damaged by Defendant's robo-calls and robo-text messages. In addition to using Plaintiff's cellular data and storage on his phone, his privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted robo-text messages and robo-calls, forcing him to divert attention away from his work and other activities. Not only did the initial receipt of the text message and phone calls distract Plaintiff away from his personal activities, Plaintiff was forced to spend time investigating the source of the text and calls and who sent them to him. Further, the robo-calls and texts utilized by Defendant using an ATDS create a chilling effect on consumers to answer their phones because they do want to be bombarded by unwanted SPAM

46.     Plaintiff brings this action seeking an injunction requiring Defendant to cease all

unsolicited calling and texting activities, as well as an award of statutory damages to the members of the Class as provided under the TCPA, together with costs and reasonable attorneys' fees.

## VI. CLASS ACTION ALLEGATIONS

47. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

48. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> All people within the United States (i) who received a robocall or were sent a text message within the four years prior to the filing of the Complaint in violation of the TCPA, (ii) from Defendant and/or its agents, (iii) promoting Defendant's products and/or services.
>
> Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

49. This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

50. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct

consisted of a standardized SPAM text messaging and robo-call campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

51. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's text, call, and marketing records.

52. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

53. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

> 1) Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent any unsolicited text message/s or robo-calls (other than a message or call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;

2) Whether Defendants used an "automatic telephone dialing system" or "artificial or prerecorded voice" calls as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

3) Whether Defendant had prior express permission, or prior express written permission, to contact Plaintiff and the other members of the putative Class when they made calls and/or texts to their phones using an automatic telephone dialing system;

4) How Defendant obtained the numbers of Plaintiff and Class members;

5) Whether the dialing system used to send the subject text messages and robo-calls is an Automatic Telephone Dialing System;

6) Whether Defendant engaged in telemarketing when it sent the robo-text messages and robo-calls which are the subject of this lawsuit;

7) Whether the robo-text messages and robo-calls sent to Plaintiff and Class Members violate the TCPA and its regulations;

8) Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

9) Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

10) Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

11) Whether Plaintiff and the Class are entitled to any other relief.

54. One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and

may serve as a basis for class certification under Rule 23(c)(4).

55. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

56. Plaintiff and members of the Class each received at least one SPAM robo-text advertisement and/or robo-call, advertising real estate, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

57. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in the federal courts, TCPA litigation and class action litigation.

58. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties

and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

59. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted robo-calls and robo-texts.

## COUNT I
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)

60. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 59 of this Complaint as though fully stated herein.

61. The foregoing acts and omissions of Defendant constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

62. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

63. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

64. WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

### COUNT II
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(b)

65. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 59 of this Complaint as though fully stated herein.

66. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

67. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and The Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

69. WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

### PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the class, against Defendant for:

    a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b. Statutory damages of $500 per text and/or call;

c. Willful damages at $1,500 per text and/or call;

d. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e. An injunction prohibiting Defendant's from using an automatic telephone dialing system to text numbers assigned to cellular telephones without the prior express written consent of the called party;

a. An injunction prohibiting Defendant from using an automatic telephone dialing system or artificial or prerecorded voice message to call numbers assigned to cellular telephones without the prior express written consent of the called party;

f. Reasonable attorney's fees and costs; and

g. Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to, and demands, a trial by jury.

**Respectfully Submitted By,**

Dated: January 10, 2020

*/s/  Joshua H. Eggnatz*
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Steven N. Saul
Fla. Bar No.: 1002827
**EGGNATZ | PASCUCCI**
5400 S. University Drive, Ste. 417
Davie, FL 33328
Tel:   (954) 889-3359
Fax:   (954) 889-5913

MPascucci@JusticeEarned.com
JEggnatz@JusticeEarned.com
SSaul@JusticeEarned.com
SGizzie@JusticeEarned.com

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on January 10, 2020, and that the foregoing document is being served via process server.

                                */s/   Joshua H. Eggnatz*
                                Joshua H. Eggnatz, Esq.